UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | | **CRIM. NO. 21-153** |
| | * | |
| **v.** | | **SECTION: T(4)** |
| | * | |
| **KRISTIAN HART** | | |
| | * | |

## ORDER

Before the Court is the Defendant Kristian Hart's *Motion to Dismiss*.[1] The Government filed a response.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND

On November 18, 2021, Kristian Hart and Jerry Trabona were charged with buying votes in a six count indictment.[3] Specifically, Mr. Hart was charged with one-count of Conspiracy to Commit Vote Buying and two counts of Vote Buying and Aiding and Abetting.[4] Following the indictment, Mr. Hart and the Government entered into preliminary talks for a plea deal.[5] Throughout the talks, the Government asked if Mr. Hart was willing to "cooperate" with their investigation, but Mr. Hart was "not interested."[6] At that time, the Government told Mr. Hart it was "considering additional charges" against him.[7] After the negotiations failed, the Government declined to "extend[] a plea offer…in light of [the] assertion that Mr. Hart does not wish to

---

[1] R. Doc. 71.
[2] R. Doc. 74.
[3] R. Doc. 1.
[4] *Id.*
[5] R. Doc. 71-1 at 1-2; R. Doc. 74 at 2-3.
[6] R. Doc. 74 at 3.
[7] R. Doc. 74 at 3; R. Doc. 71-1 at 2.

cooperate."[8] Two weeks later, the Government brought an additional count of Vote Buying and Aiding and Abetting against Mr. Hart.[9]

Now, Mr. Hart asks this Court to dismiss the new charge against him, arguing the Government's decision to seek it was "vindictive" in nature.[10] Specifically, Mr. Hart relies on three factors to show vindictiveness: a Government email, the prosecutors' prior knowledge, and the timing of the charge. First, Mr. Hart points to an email from the Government as direct or circumstantial evidence of vindictiveness.

> At this time, the Government will not be extending a plea offer…in light of your assertion that Mr. Hart does not wish to cooperate. As we have discussed previously, the Government is considering charging your client with additional crimes in connection with this conduct during other election cycles, so if Mr. Hart decides he would like to cooperate before additional charges are added, he would need to notify us by June 21.[11]

Second, Mr. Hart contends the Government "had the evidence of the 2020 alleged illegal activity," the basis for the new charge, at the time of the original Grand Jury proceeding.[12] Consequently, Mr. Hart asserts, the Government's motivation for bringing the charge cannot be to enforce the laws of this Nation, but instead to punish him for not cooperating. Third, Mr. Hart contends the "timing of the superseding indictment," namely two weeks after he firmly decided not to cooperate with the Government's investigation, "raises questions."[13]

The Government disagrees.[14] The Government, relying on federal case law, argues the "facts at issue here do not give rise to a presumption of vindictiveness, nor do they show actual vindictiveness" for five reasons.[15] First, the Government emphasizes its right to prosecute as it

---

[8] R. Doc. 71 at 3.
[9] R. Doc. 57 at 13.
[10] R. Doc. 71-1 at 9.
[11] *Id.* at 3.
[12] *Id.* at 4-5.
[13] *Id.* at 4.
[14] R. Doc. 74.
[15] *Id.* at 6.

sees fit, including "bring[ing] additional charges" to "carry[] out a threat" made against a defendant during plea negotiations.[16] Second, the Government maintains its email to Mr. Hart's counsel was not vindictive in nature.[17] Third, the Government contends Mr. Hart cannot meet the applicable legal standard because he "has not articulated a constitutional right" that was impacted by the Government's actions.[18] Fourth, the Government argues the new charge against Mr. Hart "does not arise out of the same nucleus of operative facts as the original charge."[19] The original charges are based on a 2016 election scheme, while the recent charge is based on a 2020 election violation. Finally, and relatedly, the Government asserts there is objective support for the new charge, including facts revealed in the investigation that followed the original Grand Jury proceeding.

> [T]he government's subsequent investigation, evidence of which was provided to defense counsel in later discovery productions, revealed new evidence and facts supporting and corroborating what was, at the time of the original indictment, a single witness's allegations of Hart's 2020 vote buying. Numerous witness statements and public records to corroborate the facts of Hart's 2020 conduct were not in the government's possession until well after the return of the original indictment.[20]

## LAW & ANALYSIS

If a "defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges" following an exercise of a constitutional right, "the court must examine the prosecutor's actions" for impropriety.[21] For example, it is improper for a prosecutor to "respond to a criminal defendant's invocation of his statutory right to appeal by bringing a more serious charge against him."[22] However, "if there is any indication that the prosecutor had a legitimate

---

[16] *Id.* at 7.
[17] *Id.* at 7, 12-13.
[18] *Id.* at 8.
[19] *Id.* at 7 (quotations omitted).
[20] *Id.* at 7, 12-13.
[21] *United States v. Brown*, 298 F.3d 392, 404 (5th Cir. 2002).
[22] *Jordan v. Epps*, 756 F.3d 395, 406 (5th Cir. 2014) (brackets omitted).

reason...for increasing the charges, then no presumption of vindictiveness is created."[23] Additionally, concerns of prosecutorial misconduct fall away when the new charges are based on newly-discovered evidence.[24] Ultimately, the "Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws."[25]

To prove a claim of prosecutorial vindictiveness, "a defendant may (1) show actual vindictiveness or (2) show sufficient facts to create a presumption of vindictiveness."[26] When examining such a claim, a district court must look to the "the context of the entire proceedings."[27] A contextual analysis may involve many factors, including the "timing of the prosecutor's decision" and whether the conduct took place before or after trial.[28] Generally, district courts more warily question the pretrial decisions of prosecutors, as opposed to actions taken in light of an appeal.[29]

In the present motion, Mr. Hart argues the Government brought the new charge against him in retaliation for his non-cooperation. Specifically, Mr. Hart points to the Government's statement warning him to "decide[] [if] he would like to cooperate before additional charges are added."[30] Additionally, Mr. Hart contends that, because the Government had knowledge of the facts supporting his recent charge before the first Grand Jury proceeding, it is only bringing the charge now to punish him. In response, the Government relies on its broad prosecutorial interests and the discovery of new evidence in the course of its investigation.

---

[23] *Brown*, 298 F. 3d at 405 (citing *United States v. Aggarwal*, 17 F.3d 737, 744 (5th Cir. 1994)).
[24] *United States v. Chappell*, 779 F. 3d 872, 880-81 (8th Cir. 2015).
[25] *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)).
[26] *Id*. (citing *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008)).
[27] *Id*.
[28] *Id*.; *United States v. Goodwin*, 457 U.S. 368, 381 (1982).
[29] *See Goodwin*, 457 U.S. 368; *Jordan*, 756 F. 3d 395.
[30] R. Doc. 71-1 at 3.

4

After reviewing the filings and the applicable law, the Court cannot find sufficient evidence to support an inference of misconduct. While the Government's email may read as a heavy-handed threat, it is not proof of prosecutorial vindictiveness for two reasons. First, considering the contents of the Superseding Indictment, it is clear that new evidence was uncovered during the Government's investigation that may have widened the scope of this case. The Superseding Indictment adds one new charge against Mr. Hart and implicates four new persons.[31] That is not an unremarkable update in a conspiracy case, and the Government cannot be faulted for following up before trial.[32] After all, "[i]n the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution…" and, in doing so, may introduce additional charges.[33]

Second, and relatedly, the Government's new charge is based on a set of facts that is distinct from those which formed the basis of Mr. Hart's original charges. Counts 1, 5, and 6 of the first Indictment charge Mr. Hart with buying votes in a 2016 election.[34] Count 7 of the Superseding Indictment charges Mr. Hart with buying votes in a 2020 election. Consequently, the counts deal with separate events, namely different elections separated by four years and at least one operative.[35] Therefore, the Government's actions do not appear to be motivated by spite, but instead represent a use of the Government's "broad discretion to enforce the Nation's criminal laws."[36] However, even if some or all of the facts behind Count 7 were known to the prosecutors before the Superseding Indictment, that does not necessarily mean the Government acted inappropriately. After all, a federal prosecutor may, in the course of an investigation, "come to

---

[31] R. Doc. 57 at 2.
[32] The Court notes that the new count was brought prior to any appeal or trial.
[33] *Goodwin*, 457 U.S. at 381.
[34] R. Doc. 57 at 4, 13; R. Doc. 1.
[35] The original charges center around the purchase of votes from Persons D and G. The new count introduces Person H, who Mr. Hart allegedly purchased votes for from Persons G, I, J, and K.
[36] *Armstrong*, 517 U.S. at 464 (citation omitted).

realize that information possessed by the State," although known before, "has a broader significance" and may justify new charges.[37]

The Government enjoys broad, but not unlimited, powers in enforcing the laws of the United States. If the Government attempted to pressure Mr. Hart into cooperating, it did not do so impermissibly in this matter.[38] Accordingly, the motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, the *Motion to Dismiss* is **DENIED**.

New Orleans, Louisiana this 14th day of July, 2022.

_____
Hon. Greg Gerard Guidry
United States District Judge

---

[37] *Goodwin*, 457 U.S. at 381.
[38] *See id.* at 380-81 ("…changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial 'vindictiveness.' An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded"); *Saltzman*, 537 F. 3d at 360 ("the Fourteenth Amendment did not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged. It was not disputed that the additional charge was justified by the evidence, that the prosecutor was in possession of this evidence at the time the original indictment was obtained, and that the prosecutor sought the additional charge because of the accused's refusal to plead guilty to the original charge") (citation omitted)).